UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PROJECT DRILLING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-CV-0427-CVE-CDL |
| | ) |
| LEDYA OIL AND GAS EXPLORATION AND PRODUCTION, SA, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court are the following motions: plaintiff's Motion for Preliminary Injunction or, Alternatively, Writ of Attachment and Brief in Support (Dkt. # 17); plaintiff's Motion to Amend Writ of Attachment (Dkt. # 18); and Defendant Ledya Oil and Gas Exploration and Production, SA's Motion to Dismiss and Brief in Support (Dkt. # 20). Defendant Ledya Oil and Gas Exploration and Production, SA (LOG) argues that the case should be dismissed for lack of personal jurisdiction, improper service of process, and for violation of the "two dismissal" rule. Dkt. # 20. Plaintiff Project Drilling, LLC (Project) responds that there is no basis for dismissal of its claims, and Project seeks a preliminary injunction preventing LOG from removing any of its property from the United States. Dkt. ## 17, 18.

**I.**

Project is a limited liability company organized under the laws of Kansas, and Project's members are citizens of Kansas. Dkt. # 16, at 1. LOG is a Societé Anonyme organized under the laws of the Democratic Republic of Congo (DRC), and its principal place of business is located in Kinshasa, DRC. Id. Project alleges that it entered into two written sale and purchase agreements

with LOG for two oil and gas drilling rigs, and the rigs were located in Osage County, Oklahoma when the agreements were negotiated. Id. at 2. Project states that a representative of LOG came to Oklahoma to inspect the rigs and conclude the sale. Id. The sale agreements provided that the rigs were being sold "as is," and LOG was responsible for paying for any repairs to the rigs. Id. Project states that LOG elected to hire Project to perform repairs on the rigs pursuant to an oral agreement, and Project initially estimated that it would cost approximately $100,000 to repair each rig. Id. at 3. LOG allegedly expanded the scope of work and requested a complete refurbishment of the rigs, and a representative of LOG inspected the rigs in Osage County as the work progressed. Id. LOG's representative and A.C. Teichgraeber, the president of Project, met at a bank in Tulsa, Oklahoma to wire payments from Oklahoma to Project's bank account in Kansas. Id. Project alleges that, based on LOG's history of making timely payments, it released the rigs to LOG upon completion of the repairs, even though there was an outstanding balance of $208,003 for repairs performed by Project. Id. LOG arranged for transportation of the rigs to the Port of Houston for shipment to the DRC. LOG maintains its headquarters in the DRC and it has no assets in the United States other than the rigs.

On November 9, 2021, Project filed a case in Osage County District Court alleging that LOG refused to pay over $200,000 for repairs to the two rigs, and Project sought to foreclose a mechanic's and materialmen's lien as to any component parts of the rigs that remained in Osage County. Dkt. # 20-2, at 3-4. Project also alleged a claim for unjust enrichment against LOG, and Project sought damages in the amount of $208,003 and injunctive relief. Id. at 4-6. On November 12, 2021, Project filed a case in Texas state court alleging a breach of contract claim against LOG and seeking a writ of attachment against LOG's property. Dkt. # 17-2. The Texas state court issued a temporary

2

restraining order enjoining LOG from removing any of its property from Harris County, Texas. Dkt. # 17-3. LOG removed the case to Southern District of Texas, and that court dissolved the temporary restraining order. LOG filed a motion to dismiss the Texas case, arguing that LOG was not subject to personal jurisdiction in Texas and that service of process was improper under Fed. R. Civ. P. 4. Project Drilling, LLC v. LOG EP SA, 21-CV-3808, Dkt. # 4 (S.D. Tex. Nov. 22, 2021). On November 30, 2021, Project filed a notice of dismissal in the Osage County case. Dkt. # 20-3. Project has also dismissed the case in the Southern District of Texas by filing a notice of dismissal on December 8, 2021. Dkt. # 20-4.

On December 3, 2021, Project filed this case alleging claims of breach of contract and quantum meruit against LOG, and Project seeks foreclosure of its mechanic's lien. Dkt. # 2. Project filed a motion for a temporary restraining order or a writ of attachment (Dkt. # 4) to prevent LOG from removing any remaining assets from the United States. The Court granted Project's motion in part and entered an emergency writ of attachment (Dkt. # 8) that would remain in effect for 14 days to temporarily prohibit LOG from removing its assets from the United States. Dkt. ## 7, 8. The Court permitted the emergency writ of attachment to expire on December 17, 2021 after Project failed to establish that the Court had the authority to exercise jurisdiction over property outside of Oklahoma pending the conclusion of this case. Dkt. # 34. The Court set this matter for a status conference on January 25, 2022, and the Court heard additional argument as to the pending motions. Dkt. # 43.

## II.

LOG argues that it lacks sufficient minimum contacts with Oklahoma for this Court to exercise personal jurisdiction over LOG, and LOG further argues that Project failed to effect proper

service of process under Fed. R. Civ. P. 4.  Dkt. # 20.  LOG also argues that Project has already voluntarily dismissed two prior cases involving the same parties and claims, and Project's claims in the case should be dismissed pursuant to the "two dismissal rule" under Fed. R. Civ. P. 41(a)(1)(B).

**A.**

LOG argues that it is a foreign corporation that does not regularly conduct business in Oklahoma, and it did not contemplate that it could be haled into court in Oklahoma as a result of its oral contract for the repairs of two oil and gas rigs.  Dkt. # 20, at 16-20.  LOG acknowledges that it entered an oral contract with Project and that the rigs that were the subject of the oral contract were located in Oklahoma.  Id. at 19.  However, LOG claims that it contemplated that rigs would need only minor repairs and it did not anticipate an ongoing business relationship with Project.  Id.  There is no dispute that LOG does not regularly conduct business in Oklahoma, and Project does not argue that LOG would be subject to general personal jurisdiction in Oklahoma.  Dkt. # 38, at 20.  Project argues that LOG purposefully directed its activities toward Oklahoma by entering a contract for the sale and repair of two oil and gas rigs located in Oklahoma.  LOG knew that the rigs were located in Oklahoma when it entered the contractual arrangement with Project, and LOG sent representatives to Oklahoma to inspect the rigs and negotiate the contract.  Id.  Project asserts that its claims arise out of LOG's contacts with Oklahoma and the repair of the two rigs that LOG knew were located in Oklahoma.

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant.  OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).

"When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id. "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp., 471 U.S. at 472).

Project does not contend that LOG is subject to general personal jurisdiction in Oklahoma and, in such cases, the personal jurisdiction analysis as to specific personal jurisdiction requires the district court to consider three factors: "(1) whether the defendant purposefully directed its activities at residents in the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). Project argues that the oral agreement for the repair of the rigs was executed and performed in Oklahoma, the property that was the subject of the oral agreement was located in Oklahoma, and LOG sent representatives to Oklahoma to inspect Project's work and make payments using an Oklahoma bank. To establish purposeful direction, plaintiff must show that the defendant engaged in "(a) an

intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state . . . ." Id. at 1265 (quoting Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008)). Project has met its burden to show that LOG purposefully directed its actions toward Oklahoma. LOG intentionally entered a contract with Project for the purchase of, and repair and refurbishment of, rigs located in Oklahoma, and the evidence shows that a representative of LOG personally inspected the rigs in Oklahoma prior to entering the contract for sale of the rigs. Dkt. # 17-1, at 2. When the parties entered a separate oral contract for repair of the rigs, LOG already knew that the rigs were located in Oklahoma and that the repairs would also be performed in Oklahoma. Id. There is a dispute about the scope of the oral contract for the repair of the rigs, but the evidence is clear that both parties knew the repairs would be performed in Oklahoma. Plaintiff's counsel represented at the January 25, 2022 hearing that some parts of rig number 2 still remain in Osage County and that plaintiff is incurring storage charges for the parts. This evidence establishes that LOG engaged in an intentional act aimed at Oklahoma and any injury suffered by Project was felt in Oklahoma. Project's claims against LOG clearly arise out of LOG's contacts with Oklahoma, and the same evidence also establishes that Project's injury arose from LOG's contacts with Oklahoma.

Project must also show that it would not offend traditional notions of fair play and substantial justice for this Court to exercise jurisdiction over LOG. The Tenth Circuit has provided district courts five factors to consider in determining whether exercise of personal jurisdiction would offend the traditional notions of fair play and substantial justice. The first factor is the burden on defendant of litigating in plaintiffs' chosen forum. OMI Holdings, 149 F.3d at 1095. The Tenth Circuit has said that "[t]his factor is of special significance, because it serves to prevent the filing of vexatious

7

claims in a distant forum where the burden of appearing is onerous." Id. at 1096 (citing World-Wide Volkswagen, 442 U.S. at 292). The second factor analyzes Oklahoma's interest in resolving the parties' dispute. OMI Holdings, 149 F.3d at 1095. Oklahoma "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 474 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). The third factor examines "the plaintiff's interest in receiving convenient and effective relief" in the forum state. OMI Holdings, 149 F.3d at 1095. "This factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." Id. at 1097 (citing P. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985)). The fourth factor concerns "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which the Tenth Circuit has stated is the examination of "whether the forum state is the most efficient place to litigate the dispute." Id. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Benton v. Cameco Corp., 375 F.3d 1070, 1079 (10th Cir. 2004) (quoting OMI Holdings, 149 F.3d at 1097). The fifth and final factor examines "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." OMI Holdings, 149 F.3d at 1097.

      The first factor is the burden on the defendant in having to litigate in the plaintiff's chosen forum. There will likely be some burden on a foreign corporation that is required to litigate a claim in the United States, but LOG has already sent representatives to Oklahoma to complete the

purchase and repair of the rigs that are the subject of Projects claims. There will undoubtedly be some expense incurred by LOG in defending against Project's claims, but this is not a complex case and the burden of defendant against Project's claims in not particularly onerous. The second factor (Oklahoma's interest in providing a forum) does not strongly support either party as neither Project nor LOG is a citizen of Oklahoma, but the property that is the subject of the parties' dispute was located in Oklahoma when the events giving rise to this case occurred (and some still is). The third factor (convenient and effective relief for plaintiff) strongly weighs in favor of finding that Oklahoma is an appropriate forum for this case. Project has made a strong showing that it would not likely obtain any relief if it proceeded against LOG in its home country, and LOG has objected to proceeding in any forum in the United States. The burden of requiring Project to proceed against LOG in the DRC would effectively be a denial of relief to Project, and Project has a strong interest in litigating this case in the forum in which the dispute with LOG arose. The fourth and fifth factors also support the exercise of personal jurisdiction over LOG. The events giving rise to the case primarily occurred in Oklahoma, and the relevant witnesses and evidence are likely to be located in Oklahoma. Choice of law rules will likely require any court hearing this case to apply Oklahoma law to resolve Project's claims, and all of Project's claims can be resolved in a single case in Oklahoma. The case is a straightforward alleged breach of contract that does not implicate the fundamental social polices of any state or the DRC, and there would no be harm to the interstate or international justice systems by trying the case in Oklahoma. The Court does not find that traditional notions of fair play and substantial justice would be offended by allowing Project to proceed with its claims against LOG in Oklahoma, and Project has met its burden as to each element necessary to establish that the Court has specific personal jurisdiction over LOG.

**B.**

LOG argues that plaintiff's claims should be dismissed for insufficient service of process under Fed. R. Civ. P. 12(b)(5), because the evidence does not establish that Project actually served LOG at its office in the DRC. Dkt. # 20, at 22-23. Project responds that it served LOG at is office in the DRC by means of a process server, and the mere fact that the female employee refused to give her name does not invalidate the service of process on LOG. Dkt. # 38, at 24-25.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). Fed. R. Civ. P. 4(f) governs service of process as to individuals in foreign countries. Fed. R. Civ. P. 4(f). Rule 4(f) states, in pertinent part:

> an individual . . . may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . (2) if there is no internationally agreed means, . . . by a method that is reasonably calculated to give notice . . . [and] (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1), (2) and (3). Further, under Fed. R. Civ. P. 4(h), a "foreign corporation . . . must be served . . . at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual[.]" Fed. R. Civ. P. 4(h)(2). Finally, Fed. R. Civ. P. 4(m) states that

> [i]f a defendant is not served within 90 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff– must dismiss the action without prejudice against [those] defendant[s] or order that service be made within a specified time . . . [however,] [t]his subdivision (m) does not apply to service in a foreign country under Rule 4(f), [or] 4(h)(2)[.]

Fed. R. Civ. P. 4(m).

In this case, Project hired a process server to personally serve process on LOG at its office in the DRC. The process server, Bwambale Vayighonga McNally, has provided an affidavit stating that he served copies of the summons, complaint, order (Dkt. # 7), and the emergency writ of attachment on an LOG employee who stated that she was authorized to accept service. Dkt. # 38-1, at 1. The employee refused to give her name, but the employee did stamp the documents with the LOG's company stamp to show that the documents had been received by LOG. Id. The employee also initialed the documents to acknowledge receipt. Id. LOG claims that service on an unidentified LOG employee does not satisfy the requirements of Rule 4(f), and LOG argues that serving a "Jane Doe" who claims that she is employed by the defendant does not constitute valid service of process. Dkt. # 20, at 23 (citing Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds v. R. Baker & Son All Industrial Servs., Inc., 2014 WL 6606402 (E.D.N.Y. Aug. 4, 2014)). LOG speculates that the person who accepted service from the process server was an "unauthorized employee of defendant, an employee of another entity, an interloper, or a mere passerby." Id. The Court finds that circumstances related by the process server contain sufficient indicia of reliability that the person who accepted service on behalf of LOG was authorized to do so, and plaintiff's claims should not be dismissed for improper service in violation of Rule 4. The person who accepted service for LOG represented that she was an employee who was authorized to accept service, even if she would not provide her name. The employee also stamped the documents with LOG's company stamp and initialed to documents to indicate that they had been received by LOG. The documents were delivered to LOG's office in the DRC, and the return of service contains a photograph of the stamped and initialed documents.

Considering the totality of the circumstances, the Court does not find that the employee's refusal to give her name to the process server invalidates service of process in a foreign country that otherwise satisfied the requirements of Rule 4, and LOG's request to dismiss plaintiff's claims for improper service of process is denied.

## C.

LOG argues that Project has previously dismissed two lawsuits involving the same parties and claims, and LOG argues that the second dismissal should be given preclusive effect that prevents Project from proceeding with its claims in this case. Dkt. # 20, at 9-12. Project responds that the term "adjudication on the merits" as used in Rule 41 prohibits it from refiling the same claims in the same court in which the notice of dismissal was filed, and Rule 41 does not give the prior dismissal preclusive effect in this case. Dkt. # 38, at 12.

Under Fed. R. Civ. P. 41(a), a plaintiff may dismiss an action without a court order by filing a notice of dismissal or a stipulation of dismissal, depending upon whether the defendant has appeared in the case. Rule 41(a)(1)(B) provides that a dismissal by notice or stipulation of dismissal is without prejudice, but "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Rule 41 does not define "adjudication on the merits." Rule 41(b) also uses the phrase "adjudication on the merits" to describe the effect of an involuntary dismissal, and the Supreme Court has considered whether a dismissal under Rule 41(b) is entitled to preclusive effect in other lawsuits involving the same parties or claims. In Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001), the defendant argued that a prior involuntary dismissal governed by Rule 41(b) was an "adjudication on the merits" with preclusive effect that prevented the filing of a new case

asserting the same claims in another federal district court. Id. at 500-01. The Supreme Court rejected the defendant's argument that all judgments "on the merits" necessarily had preclusive effect in another court, and the term "judgment on the merits" had come to encompass "judgments . . . that do *not* pass upon the substantive merits of a claim and hence do *not* (in many jurisdictions) entail claim-preclusive effect." Id. at 502. The Supreme Court contrasted the term "dismissal without prejudice" as used in Rule 41(a), which is understood to mean that the plaintiff can refile the same claims in the same court, and interpreted the term "adjudication on the merits" to mean only that the plaintiff would be prohibited from refiling the same claims in the same federal district court. Id. at 505-06.

LOG cites Cabot Golf CL-PP 1, LLC v. Nixon Peabody, LLP, 575 F. App'x 216 (5th Cir. 2014) (unpublished), for the proposition that a second voluntary dismissal of claims by a plaintiff supports the application of res judicata in a third case involving the same parties and claims. However, Cabot Golf is an unpublished case from outside the Tenth Circuit, and the Fifth Circuit assumed without discussion that the term "adjudication on the merits" meant that the dismissal had a preclusive effect in any federal court. Courts must be careful not to read the two dismissal rule too broadly, because it is an "exception to the general principle, contained in Rule 41(a)(1) and honored in equity prior to the adoption of the Federal Rules, that a voluntary dismissal of an action does not bar a new suit upon the same claim." ASX Inv. Corp. v. Newton, 183 F.3d 1265, 1267 (11th Cir. 1999). The Court finds that the second voluntary dismissal of Project's claims in the Southern District of Texas precludes Project from refiling its claims in that court, but the two dismissal rule does not prevent Project from proceeding with its claims in this case. There is no reason to give the term "adjudication on the merits" different meanings in Rule 41(a) and Rule

13

41(b), and the Supreme Court in Semtek clearly explained that an "adjudication on the merits" under Rule 41(b) created by a voluntary dismissal does not automatically have a preclusive effect in another federal district court. This complaint in this case was filed before Project voluntarily dismissed its case in the Southern District of Texas, and the Court finds no basis to give preclusive effect to a voluntary dismissal filed in another federal district court after this case had already been filed by Project.

### III.

Project seeks a preliminary injunction preventing LOG from removing any of its property from the United States, because Project will not be able to enforce a judgment against LOG in the DRC if Project prevails on its claims. Dkt. # 17. In the alternative, Project asks the Court to issue a writ of attachment for LOG's property located at the Port of Houston that is awaiting shipment to the DRC.[1] LOG responds that Project cannot establish that it will suffer irreparable harm without a preliminary injunction, because LOG has a consistent payment history on its debts to Project and Project's assertions that a judgment would be uncollectible are speculative. Dkt. # 39.

A preliminary injunction is an "extraordinary equitable remedy designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'" Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1225 (10th Cir. 2009) (quoting Univ. Of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). To be entitled to a preliminary injunction, the moving party must establish the following:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the

---

[1] Project has also filed a motion (Dkt. # 18) to amend the emergency writ of attachment previously entered by the Court, because Project discovered that certain property not included in the emergency writ of attachment was still awaiting shipment to the DRC. The emergency writ of attachment has already expired and Project's motion to amend the emergency writ of attachment (Dkt. # 18) is moot.

>movant outweighs the injury to the other party under the preliminary injunction; and
>(4) the injunction is not adverse to the public interest.

Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1066 (10th Cir. 2001) (quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991)); see also Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) ("It is frequently is observed that a preliminary injunction is an extraordinary remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.").

The Tenth Circuit has stated that "probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," and the "moving party must demonstrate that such injury is likely before the other requirements will be considered." DTC Energy Group, Inc. v. Hirschfeld, 912 F.3d 1263, 1270 (10th Cir. 2018). "Proving irreparable harm . . . is not 'an easy burden to fulfill,'" and the moving party must show "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." Husky Ventures, Inc. v. B55 Investments, Ltd., 911 F.3d 1000, 1011 (10th Cir. 2018). "Purely speculative harm will not suffice," and the plaintiff must show that the threatened harm is likely to occur before the district court rules on the merits of the case." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009). The Tenth Circuit has summarized its precedent as to irreparable harm to require that the moving party's injury "must be both certain and great, and that it must not be merely serious and substantial." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1262 (10th Cir. 2004).

Project argues that it will suffer irreparable harm if LOG is permitted to remove components of the rigs from the Port of Houston, because these components are the only assets that LOG has in the United States that could be used to pay a judgment. Dkt. # 17. Project asserts that LOG is

essentially "judgment-proof" and any judgment in favor of Project will essentially be uncollectable unless LOG still has assets in the United States. Id. at 10. LOG responds that it has a consistent payment history with Project before this dispute arose, and its failure to pay the disputed amount for repairs does not establish that LOG will refuse to pay a judgment entered by this Court. Dkt. # 39, at 3. LOG also argues that potential economic loss is insufficient as a matter of law to qualify as irreparable harm. The Tenth Circuit has consistently found that economic loss, by itself, does not generally constitute irreparable harm. Port City Properties v. Union Pacific R. Co., 518 F.3d 1186 (10th Cir. 2008); Schrier v. University of Colorado, 427 F.3d 1253, 1267 (10th Cir. 2005); Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003).

Project has not met its burden to establish that it will suffer irreparable harm or even that a preliminary injunction would likely be effective to prevent the threatened harm to Project. The primary relief sought by Project is money damages and any injunctive relief sought by Project is intended to ensure that Project is able to collect money damages should the Court enter judgment in Project's favor. The parties agree that LOG has previously made timely payments to Project for the sale and repair of the two oil and gas rigs, but the parties dispute whether LOG owes any additional amounts to Project for the repairs that are the subject of Project's claims in this case. The Court does not wholly discount Project's assertions that it will be difficult to execute on a judgment against LOG, but there is evidence that LOG has a history of paying its obligations and the Court will not assume that LOG would be unwilling to pay a judgment should Project prevail on its claims. Based on Project's representations, it also appears that a preliminary injunction or writ of attachment would largely be ineffective, because the component parts of the two oil and gas rigs have already been removed from the Port of Houston by LOG.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Preliminary Injunction or, Alternatively, Writ of Attachment and Brief in Support (Dkt. # 17) and Defendant Ledya Oil and Gas Exploration and Production, SA's Motion to Dismiss and Brief in Support (Dkt. # 20) are **denied**.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Amend Writ of Attachment (Dkt. # 18) is **moot**.

**DATED** this 11th day of February, 2022.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE